UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| SUNSERRA AT CRESENT BAR HOMEOWNERS ASSOCIATION, a Washington non-profit corporation,<br><br>                Plaintiff,<br>v.<br><br>CONTINENTAL WESTERN INSURANCE COMPANY, an Iowa company;<br>PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania company,<br><br>                Defendants. | NO.   2:21-cv-00321<br><br>**COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BAD FAITH, CPA VIOLATIONS AND NEGLIGENCE**<br><br>**JURY DEMAND** |

Plaintiff Sunserra at Cresent Bar Homeowners Association (the "Association") alleges as follows:

### I.     INTRODUCTION

1.1   This is an action for declaratory judgment and monetary damages, seeking:

(A)   A declaration of the rights, duties and liabilities of the parties with respect to certain controverted issues under insurance policies issued to the Association.

(B)   Monetary damages for breach of contract, CPA violations, bad faith, and negligence.

(C)   CPA penalties of up to $25,000 per violation.

(D)   Attorneys' fees (including expert witness fees) and costs.

(E)   Any other relief the Court deems just and equitable.

## II. PARTIES AND INSURANCE CONTRACTS

2.1  <u>The Association</u>. The Association is a nonprofit corporation organized under the laws of the state of Washington with its principal place of business located in Quincy, Washington. Sunserra is a master planned community of single-family homes, duplexes, triplexes, and fourplexes located in Quincy, Washington. In total, there are 251 units in 143 buildings at Sunserra. The Association is responsible to maintain and repair the building exteriors and to purchase property insurance for all buildings at Sunserra.

2.2  <u>Continental Western Insurance Company.</u> Continental Western Insurance Company ("CWIC") is an Iowa company and is registered and authorized to sell insurance in the State of Washington. CWIC sold insurance policies to the Association, including Policy Numbers:

BOP 2906595-22 (1/20/11 to 1/20/12)

BOP 2906595-23 (1/20/12 to 1/20/13)

BOP 2906595-24 (1/20/13 to 1/20/14)

BOP 2906595-25 (1/20/14 to 1/20/15)

The CWIC policies insured all 143 buildings at Sunserra as covered property.

2.3  <u>Philadelphia Indemnity Insurance Company.</u> Philadelphia Indemnity Insurance Company ("PIIC") is a Pennsylvania company and is registered and authorized to sell insurance in the State of Washington. PIIC sold insurance policies to the Association, including Policy Numbers:

PHPK1276085 (1/20/2015 – 1/20/2016)

PHPK1442953 (1/20/2016 – 1/20/2017)

PHPK1602526 (1/20/2017 – 1/20/2018)

PHPK1735818 (1/20/2018 – 1/20/2019)

PHPK1931746 (1/20/2019 – 1/20/2020)

The PIIC policies insured all 143 buildings at Sunserra as covered property.

2.4  <u>Sunserra Insurers</u>.  CWIC and PIIC shall be collectively referred to as the "Sunserra Insurers."

2.5     Sunserra Policies. The policies issued to the Association by the Sunserra Insurers shall be collectively referred to as the "Sunserra Policies."

### III.     JURISDICTION AND VENUE

3.1     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

3.2     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as the Sunserra Insurers marketed and sold insurance to the Association in Quincy, Washington; a substantial part of the events giving rise to the claim, including the breach of contract, occurred in Washington; and the insured buildings are located in Quincy, Washington.

### IV.     FACTS

4.1     Incorporation by Reference. The Association re-alleges the allegations of paragraphs 1.1 through 3.2, above, as if fully set forth herein.

4.2     Tenders to Sunserra Insurers.  The Association discovered hidden water damage to a beam supporting a deck.  The beam was wrapped in trim and covered by a soffit.  The hidden water damage to the beam was unknown and could not be seen until the trim and soffit were removed. The Association tendered claims to its insurers and asked them to investigate for any other covered damage.

4.3     The Sunserra Insurers' Unreasonable Investigation.  Based upon a cursory and unreasonable investigation the Sunserra Insurers denied that other beams were damaged.  The Association then arranged for the beams to be tested at Washington State University.  The testing proved that the beams were damaged by (i.e. had lost substantial strength due to) water intrusion.

4.4.a     CWIC's Unreasonable Denial Based Upon Its Failure to Apply Washington's EPC Rule.  CWIC correctly determined that both its own expert, and the Association's expert "opined that weather conditions (rain water and melted snow) and various faulty or inadequate

workmanship issues both caused the resulting damage." L. Splinter letter to L. Karstetter dated 9/23/19, p. 14.

    4.4.b    CWIC also correctly determined that:

> [T]here is one covered cause of the damage (rain and melted snow) and one excluded cause (faulty or inadequate workmanship).
>
> [CWIC] has determined that neither the weather conditions nor the faulty work issues initiated a sequence of events resulting in the other. As a result, [CWIC] has determined that these two causes are independent, concurrent causes of the damage. Consequently, there is coverage for the HOA's damages . . . .

*Id.* at 14. Based upon these undisputed facts CWIC should have found coverage. Instead, however, CWIC unreasonably denied coverage based upon a misapplication of Washington law and a misrepresentation that a policy exclusion for rot or fungal growth bars coverage.

    4.4.c    First, CWIC misapplied Washington's efficient proximate cause ("EPC").

> [The EPC] rule has broad application whenever a covered occurrence under the policy—whatever that may be—is determined to be the efficient proximate cause of the loss. *See, e.g., Vision One, LLC v. Phila. Indem. Ins. Co.*, 174 Wn.2d 501, 521, 276 P.3d 300 (2012) (holding that coverage existed where faulty workmanship, a covered peril, combined with an excluded peril as the efficient proximate cause of the loss).

*Zhaoyun Xia v. ProBuilders Specialty Ins. Co. RRG*, 188 Wn.2d 171, 183, 400 P.3d 1234, 1240 (2017).

> In such a situation, the efficient proximate cause rule mandates coverage, even if an excluded event appears in the chain of causation that ultimately produces the loss. *Safeco Ins. Co. of Am. v. Hirschmann*, 112 Wn.2d 621, 628, 773 P.2d 413 (1989).

*Vision One*, at 519. In other words where the EPC is covered, all resulting damage is covered, even if the resulting damage (e.g. rot) could be otherwise be excluded.

    4.4.d    In *Greenlake Condo. Ass'n v. Allstate Ins. Co.*, No. C14-1860 BJR, 2015 U.S. Dist. LEXIS 184729, at *23-24 (W.D. Wash. Dec. 23, 2015) the policy at issue covered weather

conditions such as rain, but excluded inadequate construction, deterioration, mold, and rot. Citing *Vision One* and the "'concurrent perils' doctrine" (*Greenlake*, at *31) Judge Rothstein explained that under Washington's EPC rule:

- "[B]ecause weather/rain is a covered peril under the Policy, if weather/rain was the EPC of the damage in this case, the EPC rule requires coverage of damage caused by weather/rain, even if that damage is caused by otherwise-excluded perils such as rot or mold." *Id.* at 28.
- "[T]he jury need not necessarily find that the EPC was 'either' one or the other, but could instead find that the damage was caused by a combination of rain and inadequate construction (which would permit coverage . . .)." *Id.* at *27.
- "[I]f the EPC of the damage in this case was weather/rain or a concurrent combination of weather/rain and inadequate construction, the EPC rule mandates coverage of all damage." *Id.* at 36.

4.4.e    In *Sunwood Condo. Ass'n v. Travelers Cas. Ins. Co. of Am.*, No. C16-1012-JCC, 2017 U.S. Dist. LEXIS 189892, at *8 (W.D. Wash. Nov. 16, 2017), the policies at issue also covered weather conditions, but excluded inadequate construction, rot, and deterioration. Citing *Greenlake,* (*Sunwood* at *10) Judge Coughenour agreed with Judge Rothstein that *Vision One* recognized coverage for concurrent causes under Washington's EPC rule:

- "Unless precluded by policy language, the [EPC] rule leads to coverage where a covered peril combines with an excluded peril as the concurrent EPC of the loss." *Id.* at *10.
- "Unless otherwise stated by policy language, a covered cause of loss and excluded cause of loss can combine as the EPC of a loss, leading to coverage." *Id.* at *25.
- Thus, the Association's loss would be covered if caused by concurrent perils of rain and inadequate construction." *Id.* at *25.

4.4.f    At Sunserra, CWIC determined that a covered peril (weather conditions) combined with an excluded peril (faulty workmanship) as the concurrent EPC of the loss. Thus, under Washington's EPC rule all resulting damage is covered, even if another potentially excluded event, such as rot or fungal growth appeared later in the chain of causation.

4.4.g    Because the EPC was covered (as acknowledged by CWIC) any resulting damage is also covered. CWIC improperly denied coverage for any rot or fungal growth. Even if the rot exclusion applied—which it does not as explained below—under Washington's EPC rule any rot resulting from this covered EPC is covered.

4.4.h    CWIC's failure to apply Washington's EPC rule in favor of coverage was unreasonable and a violation of its duty to investigate. *Xia*, at 189 (insurers liable for bad faith due to their failure to "conduct[] any investigation into Washington law that might have alerted them to the rule of efficient proximate cause").

4.5.a    <u>CWIC's Misrepresentations Regarding Policy Language</u>.  In its denial letter, CWIC misrepresented that: "with respect to the rot damage, there is no coverage because the insurance policies state that there is coverage for rot only if it was caused by certain perils." L. Splinter letter to L. Karstetter dated 9/23/19 at 1 (emphasis added).

4.5.b    That is not true.  The CWIC policies do <u>not</u> say that rot is covered only if it was caused by certain perils.  In fact, CWIC's policies state that there is coverage for any direct physical loss or damage to the buildings unless the loss is excluded in paragraph B. Exclusions in Section I; or Limited in Paragraph 4, Limitations in Section I.  Damage caused by rot or fungal growth is direct physical damage to the building. Thus, any unknown and unexpected damage caused by rot or fungal growth at Sunserra is covered unless an exclusion or limitation bars coverage.

4.5.c    CWIC also misrepresented that "the Policies contain an exclusion for wet rot or dry rot damage, except as set forth [in] the Policies' Limited Coverage for 'Fungi'. Wet Rot, Dry Rot

COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BAD FAITH, CPA VIOLATIONS, AND NEGLIGENCE - 6

HOUSER LAW, PLLC
1325 4th AVE., SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

1 And Bacteria." *Id.* at 14 (emphasis added).  Not true. No such exclusion appears in the CWIC
2 policies. CWIC must be thinking of an imaginary unwritten exclusion, which it now wishes it had
3 written, because no such exclusion actually exists in the CWIC policies.

4      4.5.d   In fact, the one and only rot exclusion in the CWIC policies tell us that damage
5 caused by the presence, growth, proliferation, spread or any activity of fungi, wet or dry rot or
6 bacteria is excluded if those events (i.e. the rot and fungal growth) "directly and solely results in
7 loss or damage; or Initiates a sequence of events that results in loss or damage . . . ."  In other
8 words, rot and fungal growth are excluded when they directly and solely result in damage or initiate
9 a sequence of events resulting in damage. But if rot was neither the sole cause nor the initiating
10 cause, then the rot exclusion does not apply. *Compare, Vision One*, at 521-22 (interpreting same
11 exclusionary causation language to mean that defective design exclusion does not bar coverage
12 where another event (faulty workmanship) was also a concurrent cause).

13      4.5.e   CWIC determined that weather conditions and faulty work issues were two
14 independent, concurrent causes of the damage at Sunserra. L. Splinter letter to L. Karstetter dated
15 9/23/19, p. 14. In other words, weather conditions and inadequate construction were concurrent
16 causes of water intrusion, fungal growth, and rot.  Rot was neither the direct and sole cause nor the
17 cause that initiated the sequence of events resulting in damage. On these facts the rot exclusion does
18 not apply.

19      4.5.f   As written, based on the plain meaning of the words in the policy, the rot exclusion
20 does not apply to any rot caused by other events such as weather conditions or faulty workmanship.
21 CWIC is seeking to modify the rot exclusion to make it bar coverage for rot caused by weather
22 and faulty workmanship as concurrent causes. This is a clear violation of Washington law. Where
23 "the policy language is clear and unambiguous, [courts and insurers] must enforce it as written;
24 [and] may not modify it or create ambiguity where none exists." *Quadrant Corp. v. Am. States Ins.*
25 *Co.*, 154 Wn.2d 165, 110 P.3d 733 (2005).

26
27

COMPLAINT FOR DECLARATORY RELIEF,
BREACH OF CONTRACT, BAD FAITH, CPA
VIOLATIONS, AND NEGLIGENCE - 7

HOUSER LAW, PLLC
1325 4th AVE., SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

4.5.g    CWIC is also seeking to greatly expand the rot exclusion based upon its apparent wish that it had drafted a broader exclusion. This violates Washington's "plain meaning" and "objective manifestation" rules of policy interpretation.  "Undefined terms in an insurance contract must be given their "plain, ordinary, and popular" meaning. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507, 511 (1990). "Insurance policy language must be interpreted in accord with the way it would be understood by the average person." *Lynott v. Nat'l Union Fire Ins. Co.*, 123 Wn.2d 678, 690, 871 P.2d 146, 149 (1994).  Washington has adopted the "objective manifestation" theory of contract interpretation, which means that insurers, policyholders, and courts determine the intended meaning of policy language based upon the words that the insurer chose to use (and the words that the insurer chose to delete). "We have long adhered to the objective manifestation theory of contracts. This theory means that we impute to a person an intention corresponding to the reasonable meaning of his words and acts."  *Lynott*, at 684. "It is the duty of the court to declare the meaning of what is written, and not what was intended to be written." *Id.* at 683-84. "In evaluating the insurer's claim as to meaning of language used, courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question." *Id.* at 688.

4.5.h    Moreover, under Washington law exclusions must be strictly and narrowly construed.  "[In Washington,] [e]xclusions are strictly construed against the insurer because they are contrary to the protective purpose of insurance." *Dewitt Constr. Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127, 1134 (9th Cir. 2002) (citing *Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 97 Wn. App. 335, 983 P.2d 707, 711 (Wash. Ct. App. 1999)).  "Washington law is resolute: exclusions must be construed narrowly against [the insurer]." *Canyon Estates Condo. Ass'n v. Atain Specialty Ins. Co.*, No. 2:18-cv-01761-RAJ, 2021 U.S. Dist. LEXIS 62077, at *10 (W.D. Wash. Mar. 31, 2021).

> Because "[e]xclusions from insurance coverage are contrary to the fundamental protective purpose of insurance," we construe exclusions strictly against the insurer. *State Farm Fire & Cas. Co. v. Ham & Rye, LLC*,

> 142 Wn. App. 6, 13, 174 P.3d 1175 (2007) (citing *Stuart v. Am. States Ins. Co.*, 134 Wn.2d 814, 818-19, 953 P.2d 462 (1998)). "[W]e will not extend [exclusions] beyond their clear and unequivocal meaning."

*Vision One*, at 512. Interpreted narrowly and according to its plain meaning, CWIC's rot exclusion does not apply to the damage at Sunserra.

  4.6.a <u>PIIC's Unreasonable Denial.</u> PIIC unreasonably denied coverage for the hidden water damage at Sunserra which was caused by weather conditions (rain and snow) and inadequate design or construction, operating as concurrent causes (i.e. two initiating causes neither of which caused the other). *Vision One, LLC v. Phila. Indem. Ins. Co.*, 174 Wn.2d 501, 521-22, 276 P.3d 300 (2012) (where two events combine to result in damage and neither initiates (i.e. causes) the other, the two events operate as concurrent causes of damage). Because one of the two concurrent causes (weather conditions) is covered, the loss is covered. *Id.* (affirming trial court's order at 509).

  4.6.b In *Vision One*, the PIIC policy at issue contained exclusionary causation language which barred coverage if an excluded event initiated a sequence of events resulting in damage, regardless of the nature of the nature of any intermediate or final event in that sequence. But PIIC never invoked that language in its denial letter and was therefore precluded from relying upon it. In the absence of such language the *Vision Court* affirmed that loss caused by one or more non-excluded (i.e. covered) events in combination with one or more excluded events is covered. *Vision One*, at 509, 522. Moreover, the Court explained that even if it had allowed PIIC to rely upon the "initiates a sequence of events" causation language, the policy would still provide coverage because the events at issue operated as concurrent causes (i.e. there was no single initiating cause of the chain of events). Id. at 521-22.

  4.6.c While in *Vision One*, PIIC could not rely upon "initiates a sequence of events" exclusionary language because it failed to cite that language in its denial letter, here, PIIC cannot rely upon any "initiates a sequence of events" exclusionary language because no such language exists in the policies that PIIC issued to Sunserra. In other policies written to other policyholders to insure other buildings in Washington, PIIC often uses a "Washington Changes" endorsement to add

COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BAD FAITH, CPA VIOLATIONS, AND NEGLIGENCE - 9

HOUSER LAW, PLLC
1325 4th AVE., SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

the "initiates a sequence of events" exclusionary language. Indeed, this language is part of the standardized Insurance Services Officer ("ISO") forms that have been used by the vast majority of insurers in Washington for at least the past 20 years.

4.6.d    But here, PIIC chose to do something different and unusual. It decided not to include the Washington Changes endorsement in the policies that it issued to cover the Sunserra buildings. This decision means that at Sunserra, PIIC decided not to exclude perils such as inadequate construction if they "[i]nitiate[] a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence."

4.6.e    After the 2012 *Vision One* decision, PIIC knew that absent "initiates-a-sequence-of-events" exclusionary language, its policy would be interpreted to cover damage "caused by *one* or more non-excluded event(s) in combination with *one* or more excluded event(s)." *Vision One*, at 509, 522. And yet, here, from 2015 to 2020 PIIC drafted the Sunserra policies so that they did not contain any "initiates-a-sequence-of-events" exclusionary language, even though this was a deviation from its usual practice in Washington. This is strong evidence that PIIC intended the Sunserra policies to cover damage "caused by *one* or more non-excluded event(s) in combination with *one* or more excluded event(s)."

4.6.f    This conclusion is reinforced by the facts that the PIIC policies were drafted to provide coverage: (1) if inadequate construction and a covered cause (such as weather conditions) combine as concurrent causes to result in damage, or (2) "if loss by a Covered Cause of Loss [e.g. weather conditions, rain, or rainwater intrusion] results" from inadequate construction.

4.6.g    PIIC knew how to exclude concurrent causes when it actually intended to do so. For example, damage from paragraph 1 events, such as flood and earth movement, is excluded under the PIIC policies even if the flood or earth movement combined with a concurrent covered cause to result in damage: "such loss is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." PIIC could have easily used this same anti-concurrent-cause language in its paragraph 3 exclusion. But PIIC chose not to exclude paragraph 3

events, such as inadequate construction, as concurrent causes. Instead, in paragraph 3 PIIC chose to exclude only damage "caused by or resulting from" inadequate construction, while also preserving coverage "if loss by a Covered Cause of Loss results." The PIIC policies at issue here are very similar to the policy that Judge Rothstein interpreted in *Greenlake* to cover inadequate construction and weather/rain as concurrent causes. The same reasoning and interpretation should apply here. As explained in *Greenlake*,

> Plaintiff contends that, because the Policy does not exclude losses caused by so-called "concurrent perils" (in this case, a combination of inadequate construction and weather/rain), it therefore covers concurrent perils. Plaintiff relies on ***Vision One***, in which the court approvingly discussed the district court's holding that "if an excluded peril and a covered peril both contributed to the property damage, then the policy would cover the loss." 174 Wn.2d at 509. The court also held that, "[t]o the extent defective design [covered] and faulty workmanship [excluded] combined to cause the loss, they acted as concurrent causes," and coverage was warranted. Support for Plaintiff's position is also found in the language of paragraph 1 of the exclusions section of the Policy, which states that the Policy "do[es] not cover any loss or damage caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event *contributing concurrently . . .* to the loss." Policy at 7 (emphasis added). While none of the exclusions in paragraph 1 apply to this case, Plaintiff argues that this language indicates that Defendant was aware of the "concurrent perils" doctrine and chose to only exclude certain concurrent perils from coverage—namely, those perils in paragraph 1. Because all of the potentially-concurrent perils in this case are located in paragraphs 2 or 3, they do not fall under the concurrent-peril exclusion language.
>
> Plaintiff is correct. The concurrent-peril language in paragraph 1 indicates that Defendant chose to exclude concurrent perils only with respect to the delineated perils in paragraph 1. Contract interpretation is a matter of law which should be decided by the Court prior to trial. *Overton*, 38 P.3d at 325. Interpreting the exclusions strictly in favor of Plaintiff, if inadequate construction and weather/rain were concurrent perils that combined to cause a loss, said loss is not excluded absent another applicable exclusion. . . .
>
> As a matter of law, based on the concurrent perils doctrine . . . , if damage to the Condominium was caused by a concurrent combination of a covered peril . . . and an excluded peril . . . , there is coverage.

*Greenlake Condo. Ass'n v. Allstate Ins. Co.*, No. C14-1860 BJR, 2015 U.S. Dist. LEXIS 184729, at

COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BAD FAITH, CPA VIOLATIONS, AND NEGLIGENCE - 11

HOUSER LAW, PLLC
1325 4th AVE., SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

*30-32 (W.D. Wash. Dec. 23, 2015). Thus, Judge Rothstein concluded that "if the EPC of the damage in this case was . . . a concurrent combination of weather/rain and inadequate construction, the EPC rule mandates coverage of all damage."

4.6.h    When evaluating the Sunserra claim, PIIC should have adopted the *Greenlake* reasonable interpretation of very similar policy language and should have acknowledged that its policies provide coverage for weather/rain and inadequate construction as concurrent causes. Instead, PIIC negligently and unreasonably denied coverage for the hidden water damage at Sunserra caused by the combination of weather and inadequate construction.

4.6.i    *Greenlake* was decided in December 2015. After the *Greenlake* decision PIIC renewed its policy at Sunserra in 2016, 2017, 2018, and 2019. At the time, PIIC knew, or should have known, based on the *Greenlake* and *Vision One* decisions, that choosing to exclude only certain perils as concurrent causes (e.g. paragraph 1 events such as flood and earth movement) would be interpreted to demonstrate its intent not to exclude other perils (including paragraph 3 events such as inadequate construction) as concurrent causes. And yet, PIIC still drafted the Sunserra policy so that only paragraph 1 perils (e.g. flood and earth movement) are excluded as concurrent causes, while paragraph 2 and 3 perils (such as inadequate construction) are not excluded, and are therefore covered, as concurrent causes. This is strong evidence that PIIC intended to cover damage from inadequate construction and a concurrent covered cause (such as weather conditions). "The application of a concurrent cause exclusion to other perils but not to the ones at issue here is indicates an intent to cover the damage or loss here if it results from concurrent covered and excluded causes." *Sunwood Condo. Ass'n v. Travelers Cas. Ins. Co. of Am.*, No. C16-1012-JCC, 2017 U.S. Dist. LEXIS 189892, at *11 (W.D. Wash. Nov. 16, 2017).

4.6.j    In the alternative, to the extent that PIIC argues against concurrent causation, the PIIC policies still provide coverage if inadequate construction was the sole initiating cause which resulted in "loss by a Covered Cause of Loss" such as weather conditions, rain, or rainwater intrusion. The inadequate construction exclusion in the PIIC policies is subject to a "resulting loss"

COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, BAD FAITH, CPA VIOLATIONS, AND NEGLIGENCE - 12

HOUSER LAW, PLLC
1325 4th AVE., SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

exception: "But if loss by a Covered Cause of Loss results, we will pay for that resulting loss." If damage caused by rain and melting snow (covered causes of loss) results from inadequate construction, then the resulting-loss exception carves out and preserves coverage. PIIC appears to have determined that damage caused by rain and melted snow resulted from inadequate construction. But PIIC unreasonably denied coverage for any such damage.

    4.6.k   PIIC also unreasonably denied coverage on the ground that damage occurred outside of its policy periods. Under Washington's continuous trigger rule, loss or damage that occurs in a process is treated as a single continuing occurrence. *Greenlake*, at *33; *Gruol Constr. Co. v. Ins. Co. of N. Am.*, 11 Wn. App. 632, 524 P.2d 427, 430 (Wash. App. 1974). Once coverage is triggered in one or more policy periods, those policies provide full coverage for all incremental and continuing damage, without allocation between insurer and insured. *See, Travelers Prop. Cas. Co. of Am. v. AF Evans Co.*, No. C10-1110-JCC, 2012 U.S. Dist. LEXIS 188758, *9 (W.D. Wash. Dec. 11, 2012). This "continuous trigger rule" means that "when damage is continuing, all triggered policies provide full coverage." *American Nat'l Fire v. B&L Trucking*, 134 Wn.2d 413, 951 P.2d 250, 255 (Wash. 1998).

    4.6.l   The commencing condition in PIIC's policies does <u>not</u> demonstrate an intent to avoid Washington's continuous trigger rule. On the contrary, an expression of coverage for loss or damage commencing during the policy period is fully consistent with an insurer's intent to cover an incremental loss so long as some damage commenced during the policy period. *Eagle Harbour Condo. Ass'n v. Allstate Ins. Co.*, 2017 U.S. Dist. LEXIS 54761 at *18-20; *Sunwood*, at *15-16, 18-21. As Judge Coughenour explained in *Sunwood*, "'loss' and 'damage' are distinct terms, and damage could commence during the policy period, resulting in a cumulative loss." *Id.* at *20.

    4.6.m   Here, the experts appear to agree that some damage from rainwater intrusion commenced during PIIC's policy periods. Thus, the commencing condition is satisfied. And under Washington's continuous trigger rule PIIC and the Association's other insurers are jointly and severally liable for the incremental loss. *Eagle Harbour*, at *20-21.

COMPLAINT FOR DECLARATORY RELIEF,
BREACH OF CONTRACT, BAD FAITH, CPA
VIOLATIONS, AND NEGLIGENCE - 13

HOUSER LAW, PLLC
1325 4th AVE., SUITE 1650
SEATTLE, WA 98101
PHONE 206.962.5810

4.6.n   After the 2021 *Vision One* decision PIIC knew that it needed to invoke the "initiates a sequence of events" exclusionary causation language in its denial letters if it wanted to avoid the *Vision One* result.  PIIC had that language available and has regularly used it in Washington.

4.6.o   But here, PIIC chose not to use the *Vision One* "initiates a sequence of events" exclusionary language in the policies that it issued to Sunserra.  Thus, PIIC cannot "invoke" any such language in a denial letter.  As a result, Philadelphia is stuck with the *Vision One* interpretation: its policies cover damage "caused by *one* or more non-excluded event(s) [rain and melted snow] in combination with *one* or more excluded event(s) [inadequate construction or maintenance]" *Vision One*, at 509, 522.

4.6.p   The experts who investigated Sunserra reported that the hidden water damage to deck framing was caused by *one* or more non-excluded event(s) [rain or melted snow] in combination with *one* or more excluded event(s) [inadequate construction or maintenance].  The damage is covered, and yet PIIC unreasonably denied the Association's claim and refused to pay for the cost of repairing the covered damage.

## V.    FIRST CLAIM: DECLARATORY RELIEF THAT THE SUNSERRA POLICIES PROVIDE COVERAGE

5.1   <u>Incorporation by Reference</u>. The Association re-alleges and incorporates by reference the allegations of paragraphs 1.1 through 4.6.p above, as if fully set forth herein.

5.2   <u>Declaratory Relief</u>.  The Association seeks declaratory relief from the Court in the form of determinations regarding the following disputed issues:

a. The Sunserra Policies are all-risk policies covering every risk, peril, cause, and loss not excluded. No exclusions, conditions, or limitations bar coverage under the Sunserra Policies for the hidden water damage to deck framing

b. The unknown loss or damage at Sunserra was incremental and progressive with some new loss or damage commencing during each policy period.

c. The Sunserra Policies cover the cost of repairing the hidden water damage to deck framing at the Sunserra buildings.

## VI.    SECOND CLAIM: AGAINST CWIC and PIIC FOR BREACH OF CONTRACT

6.1    <u>Incorporation by Reference</u>. The Association re-alleges and incorporates by reference the allegations of paragraphs 1.1 through 5.2, above, as if fully set forth herein.

6.2    <u>Contractual Duties.</u> The Sunserra Insurers had contractual duties under the terms of their respective policies to investigate, identify, and pay the cost of repairing the covered damage to the buildings at Sunserra.

6.3    <u>Breach of Contract.</u> CWIC and PIIC have failed to fulfill their contractual obligations to the Association.

6.4    <u>Damages.</u> As a direct and proximate result of CWIC and PIIC's breach of insurance contracts, the Association has been deprived of the benefits of its insurance coverage in an amount to be proven at trial.

6.5    <u>Additional Damages</u>.  As a direct and proximate result of CWIC and PIIC's breaches of their insurance contracts, the Association had to pay for covered repair costs, increased costs of reconstruction to comply with codes and other requirements, attorneys' fees, expert costs, investigation costs, and other expenses.

## VII.    THIRD CLAIM: AGAINST CWIC and PIID FOR INSURANCE BAD FAITH

7.1    The Association re-alleges and incorporates by reference paragraphs 1.1 through 6.5, above, as if fully set forth herein.

7.2    The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. RCW 48.01.030. "[A]n insurance company's duty of good faith rises to an even higher level than that of honesty and lawfulness of purpose toward its policyholders: an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests." *Tank v. State Farm Fire & Casualty Co.*, 715 P.2d 1133, 1136, 715 P.2d 1133 (1986).  An insurer

who does not deal fairly with its insured, or who does not give equal consideration to its insured's interests, fails to act in good faith. *Am. States Ins. Co. v. Symes of Silverdale, Inc.*, 150 Wn.2d 462, 470, 78 P.3d 1266 (2003).

7.3    The duty of good faith requires an insurer to conduct a reasonable investigation before refusing to pay a claim submitted by its insured. An insurer must also have a reasonable justification before refusing to pay a claim. An insurer who refuses to pay a claim, without conducting a reasonable investigation or without having reasonable justification, fails to act in good faith. *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 961 P.2d 933 (1998); *Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 792 P.2d 520 (1990).

7.4    CWIC and PIIC had a duty to investigate, evaluate, and decide the Association's claim in good faith. CWIC and PIIC breached this duty by unreasonably investigating, evaluating, and denying the claim.

7.5    A violation, if any, of one or more of the Washington claim handling standards set forth below is a breach of the duty of good faith, an unfair method of competition, an unfair or deceptive act or practice in the business of insurance, and a breach of the insurance contract. CWIC and PIIC violated Washington claim handling standards by, among other things:

A.   Failing to treat the Association's interests as equal to its own when investigating, evaluating, and deciding the claim;

B.   Failing to interpret ambiguities in policy language in favor of coverage;

C.   Failing to interpret ambiguities in case law in favor of coverage;

D.   Failing to make reasonable modifications of its interpretation of policy language and relevant case law in response to correspondence from the Association;

E.   Allowing attorneys or adjusters to take positions on behalf of CWIC and PIIC that are based upon zealous advocacy for CWIC and PIIC and equivocal interpretations of case law and/or policy language, rather than a neutral and unbiased evaluation.

F.   Refusing to pay this claim without conducting a reasonable investigation; and

G. Failing to promptly provide a reasonable explanation of the basis for the denial of the claim.

H. Denying the claim without a reasonable justification.

I. Failing to investigate and correctly apply Washington's EPC rule.

J. Failing to interpret policy language according to its plain meaning under Washington's "objective manifestation" rule.

K. Failing to enforce the policy language as written, and instead attempting to modify the policy language.

L. Interpreting exclusions broadly in violation of the rule that exclusions are to be strictly and narrowly construed against the insurer.

M. As to CWIC only: Misrepresenting policy language and misrepresenting that an exclusion for rot or fungal growth bars coverage.

N. As to PIIC only: Failing to investigate and correctly apply the *Vision One* holding that absent "initiates a sequence of events" exclusionary causation language PIIC's all-risk policy should be interpreted to cover loss or damage "caused by *one* or more non-excluded event(s) in combination with *one* or more excluded event(s)." *Vision One*, at 509, 522.

O. Failing to investigate and apply the holdings in *Vision One, Greenlake*, and *Sunwood* that damage resulting from weather conditions and inadequate construction as concurrent causes is covered.

P. Failing to investigate and evaluate the Association's claim treating the interests of the Association as equal to CWIC and PIIC's own interests.

Q. Failing to correct its unreasonable denial, misrepresentations, failure to interpret the policy in favor of coverage, and misinterpretations of policy language and Washington law even after the Association described and explained its bad-faith conduct in writing, in great detail.

7.6     As a direct and proximate result of CWIC and PIIC's breaches of their respective duties of good faith, the Association has been damaged in an amount to be proven at trial.

## VIII. FOURTH CLAIM: AGAINST CWIC and PIIC FOR VIOLATIONS OF THE CONSUMER PROTECTION ACT

8.1     The Association re-alleges and incorporates by reference paragraphs 1.1 through 7.6, above, as if fully set forth herein.

8.2     Violations of WAC claim handling standards are per se Consumer Protection Act ("CPA") violations. CWIC and PIIC's unreasonable conduct was deceptive, impacted the public, and had the capacity to deceive. The Association is a consumer.

8.3     PIIC has a pattern and practice of similar misconduct regarding its handling of other similar claims in Washington.

8.4     As a direct and proximate result of CWIC and PIIC's CPA violations, the Association has been damaged in an amount to be proven at trial. The Association is entitled to damages, CPA penalties of up to $25,000 per violation, and attorneys' fees under the CPA.

## IX.     FIFTH CLAIM: AGAINST THE CWIC and PIIC FOR NEGLIGENCE

9.1     The Association re-alleges and incorporates by reference paragraphs 1.1 through 8.4, above, as if fully set forth herein.

9.2     The Sunserra Insurers had a duty to comply with Washington insurance regulations, claim handling standards, and statutes, and to exercise reasonable care when investigating, evaluating, and deciding the Association's claim.

9.3     The Sunserra Insurers breached their duties by negligently failing to exercise reasonable care and by failing to comply with Washington insurance regulations, claim handling standards, and statutes when investigating, evaluating, and deciding the Association's claim.

9.4     As a direct and proximate result of The Sunserra Insurers' breaches the Association has been damaged in an amount to be proven at trial.

## X.  PRAYER FOR RELIEF

WHEREFORE, the Association prays for judgment as follows:

10.1 <u>Declaratory Judgment Regarding Coverage.</u> A declaratory judgment that the Sunserra Policies provide coverage as described herein.

10.2 <u>Money Damages.</u> For money damages in an amount to be proven at trial.

10.3 <u>Attorneys' Fees and Costs of Suit.</u> For reasonable attorneys' fees (including expert fees.)

10.4 <u>CPA Penalties</u>.  For CPA Penalties of up to $25,000 per violation.

10.5 <u>Other Relief</u>.  For such other and further relief as the Court deems just and equitable.

## XI.  DEMAND FOR JURY TRIAL

11.1 Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Association demands trial by jury in this action of all issues so triable.

DATED this 10th day of November 2021.

HOUSER LAW PLLC

*/s/ Daniel S. Houser*
Daniel S. Houser, WSBA #32327
Attorney for Plaintiff
1325 4th Avenue, Suite 1650
Seattle, WA 98101
Email: dan@dhouserlaw.com
Telephone: (206) 962.5810
Direct: (206) 962.5811